Charles Lynn LAY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–195.

Court of Criminal Appeals of Oklahoma.

March 24, 1988.

Michael Gassaway, Hughes & Nelson, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Charles Lynn Lay, the appellant, was convicted of Burglary in the Second Degree, After Former Conviction of Two or More Felonies, pursuant to 21 O.S.1981, § 1435 and 21 O.S.1981, § 51(B); Robbery with Firearms, After Former Conviction of Two or More Felonies, pursuant to 21 O.S. Supp.1983, § 801 and 21 O.S.1981, § 51(B); and Unauthorized Use of a Motor Vehicle, After Former Conviction of Two or More Felonies, pursuant to 47 O.S.1981, § 4–102 and 21 O.S.1981, § 51(B); and was sentenced to respective terms of imprisonment of twenty (20), fifty (50), and twenty (20) years, the sentences to run concurrently.

On April 11, 1985, at approximately 1:45 p.m., Julie B. Fernald returned to her Bethany home after jogging. Upon entering the house she noticed that items in the living room were out of place. She heard a noise from the back of the house and called out asking if anyone was there, but received no response. In looking at the door she had just entered, she noticed that it had received significant damage to the frame, especially around the door lock. She then heard a voice ordering her not to move further toward the door but to step into the living room. Fernald complied and was confronted by a man pointing a pistol toward her head. She later identified the man as the appellant, Charles Lynn Lay.

Appellant then walked past Fernald and closed the door through which she had entered the house. He ordered her into the living room where he tied her up on the floor. He removed rings from her fingers, emptied her purse onto the floor, asked her where any money was, and then took her car keys. He then went into another part of the house. When Fernald heard wood splintering, she thought appellant was breaking into a locked wooden cabinet and she called out that she had a key. Appellant returned to the living room, untied Fernald, and forcefully led her down a hallway to a back bedroom. She was unable to locate her keys, however, because the bedroom had already been ransacked and things were not in their proper place. She did tell appellant where her jewelry and a coin collection were located in the room. As appellant bent down to look for the coin collection, Fernald noticed that under his jacket appellant had placed several pistols in the waistband of his pants. Fernald's husband had a pistol collection which could not be found after the robbery. Appellant then tied up Fernald again, leaving her on the floor of the bedroom. Appellant then left and re-entered the house a couple of times. Fernald asked appellant if he was going to take her car, and he replied in the affirmative. Appellant then went out the front door and Fernald heard a car start up and drive away. From the time Fernald entered her house until the time the appellant left was half an hour. Fernald could

directly observe the appellant and his movements for fifteen (15) minutes during this time period. Several windows in the house were open and the midday sun illuminated the interior of the house.

On that day, April 11, 1985, Fernald gave a description of the intruder to the Bethany Police. A few days later she directed an agent of the Oklahoma State Bureau of Investigation in the creation of a composite drawing of the intruder. A few days after this, she identified a photograph of the appellant as that of the intruder out of a photo lineup presented to her by the Bethany Police. On April 26, 1985, fifteen days after the incident, during a lineup, she identified the appellant as the intruder.

Appellant's first assignment of error is that reversible error occurred as a result of allegedly impermissible identification methods used by the Bethany Police in violation of appellant's rights. Appellant argues that if and when judicially prohibited identification methods are found to have been used by the police, an in-court identification by a witness exposed to these methods is rendered per se inadmissible. We disagree.

■ This court, in applying *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), has repeatedly held that the admissibility of an in-court identification rests upon the independent reliability of that identification. *Klinekole v. State*, 705 P.2d 179 (Okl.Cr.1985); *Porter v. State*, 674 P.2d 558 (Okl.Cr.1984); *Reaves v. State*, 649 P.2d 780 (Okl.Cr.1982). Even if, *de arguendo*, improper identification methods are used by the police, an in-court identification is nevertheless admissible if its independent reliability within the totality of the circumstances is demonstrated to the trial court.

■ For the purpose of determining the independent reliability of an in-court identification, the Supreme Court in *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253, established a five factor test to determine reliability which this Court has repeatedly followed:

1) the prior opportunity of the witness to observe the defendant during the alleged criminal act; 2) the degree of attention of the witness; 3) the accuracy of the witness' prior identification; 4) the witness' level of certainty; and 5) the time between the crime and the confrontation.

*Porter v. State*, 674 P.2d at 559.

Fernald's in-court identification of the appellant clearly meets the requirements of this test. During the course of the crime she had appellant within her view for fifteen (15) minutes in a well-illuminated house. She has consistently and confidently identified appellant as the intruder throughout every stage of the investigation and the trial. The first confrontation of appellant by the witness occurred only fourteen (14) days after the burglary and robbery, and her in-court identification of appellant occurred within six months of the incident. Fernald's in-court identification is independently reliable and is therefore admissible. This assignment of error is without merit.

■ Appellant's second assignment claims error in the trial court's refusal to give a cautionary jury instruction regarding Fernald's eyewitness testimony. Appellant, however, has waived error by his failure to submit a written copy of the requested instruction to the trial court. *Frazier v. State*, 706 P.2d 165 (Okl.Cr. 1985); *Gee v. State*, 538 P.2d 1102 (Okl.Cr. 1975). Furthermore, there is no fundamental error because the instructions which were given fully and fairly reflected the subject matter of the case and sufficiently informed the jury of their duty to weigh the credibility of all witnesses. *Frazier v. State*, supra; *Luckey v. State*, 529 P.2d 994 (Okl.Cr.1974). This assignment is consequently without merit.

■ Appellant's third assignment of error alleges error in the admission into evidence of the composite drawing of the intruder executed at the direction of Fernald. Appellant urges us to adopt the Illinois rule and regard all composite drawings as inadmissible hearsay. See *People v. Fair*, 45 Ill.App.3d 301, 4 Ill.Dec. 15, 359 N.E.2d 848 (1977). We decline.

The admission of evidence at trial is within the sound discretion of the trial judge. *Chatham v. State*, 712 P.2d 72 (Okl.Cr. 1986); *Camp v. State*, 664 P.2d 1052 (Okl. Cr.1983). In this case, the able trial judge apparently admitted the composite drawing under a statutory exception to the hearsay rule. The particular provision under which the composite was admitted is 12 O.S.1981, § 2801(4)(a)(2), which reads:

4. A statement is not hearsay if:

a. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

.     .     .     .     .

2. consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive; ...

The trial judge allowed admission of the composite into evidence only after appellant's counsel had made an express charge of recent fabrication against Fernald. Under Oklahoma's Evidence Code, when such a charge is made, a composite drawing is clearly admissible. There is consequently no abuse of discretion on the part of the trial judge in allowing its admission. This assignment of error is also without merit.

Appellant's fourth assignment of error is that the trial court committed reversible error in not granting appellant's motion for a mistrial. Appellant claims that a mistrial was warranted because his constitutional rights, as recognized in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were violated by the State's failure to turn over allegedly exculpatory evidence.

For this Court to find reversible error, the appellant must meet the burden of showing (1) the prosecution has actually suppressed evidence after that evidence has been requested by the defense; (2) the evidence was favorable to appellant's defense; and (3) the evidence is material either to the guilt of appellant or to his punishment. *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Ray v. State*, 510 P.2d 1395 (Okl.Cr.1973); see also *United States v. Warhop*, 732 F.2d

775 (10th Cir.1984). The appellant has failed to meet this burden. In fact, a close reading of the trial transcript indicates that appellant's counsel was well aware of the evidence which appellant now claims was sequestered by the prosecution. This assignment of error is consequently without merit.

In his fifth and final assignment of error, appellant claims error in that the evidence presented at trial is insufficient to support a conviction of robbery. Appellant claims that the weight of the evidence indicates that the theft of the pistols by appellant took place before Fernald returned home; consequently, the pistols were not taken from Fernald by force or fear while they were actually in her possession.

The law of Oklahoma clearly defines the elements of the crime of robbery. In regard to the use of force or fear, 21 O.S. 1981, § 792 provides:

To constitute robbery, the force or fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery.

In this case, force or fear was employed by appellant to "retain possession" and to "overcome resistance to the taking." Appellant did not use force or fear merely as a means of escape since he continued to ransack Fernald's home for some thirty minutes after his initial use of a firearm to insure Fernald's cooperation. See *Guarino v. State*, 491 P.2d 326 (Okl.Cr.1971); *Hood v. State*, 80 Okl.Cr. 175, 157 P.2d 918 (1945). The necessary elements of the crime of robbery are present in this case, and this assignment of error is without merit.

Finding no error warranting reversal or modification, the judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concur.