Ronald Keith WILLIAMSON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–501.

Court of Criminal Appeals of Oklahoma.

Sept. 9, 1991.

## CORRECTION ORDER

The opinion in the above styled case, handed down on the 15th day of May, 1991, is hereby corrected by inserting the following beginning on the third line of page 24:

In his fourth assignment of error Appellant alleges that he was denied a fair trial by the prosecution's failure to produce the video tape of a polygraph examination taken in November 1983. The record reflects that Appellant filed a pre-trial motion to produce requesting "written copies of statements, notes, video tapes or audio tapes from his files whatsoever which might now be in his possession or known to him." (O.R. 211) The Court subsequently ordered the State to provide the names of witnesses and any exculpatory evidence. (O.R. 216) This was only one of several motions for production of evidence filed by Appellant and granted by the court. (O.R. 148, 153–154) The State provided voluminous reports and documents in compliance with the various discovery orders. (O.R. 59–101, 134–35, 140) However, the video tape was not included.

Appellant contends that he first learned about the video tape during the cross-examination of OSBI agent Gary Rogers. The prosecutor and defense counsel held differing opinions as to when Appellant first gained knowledge of the tape and whether the failure to produce the tape was intentional or merely inadvertent. As a result, the trial

judge took the issue under advisement, with an evidentiary hearing to be held at a later date. The issue was not addressed again until arguments were heard at a post-trial hearing and the State was ordered to produce the video tape.

■ In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." The prosecution violates *Brady* if after request by the defense it suppresses evidence which is both favorable to the defense and material to guilt or punishment. *See Bowen v. Maynard,* 799 F.2d 593, 602 (10th Cir.1986).

■ Materiality turns on the specific circumstances surrounding the alleged *Brady* violation. In *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985), the Supreme Court established a single test for materiality in those cases where the defense makes a specific request, a general request or no request for *Brady* material:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

■ To find reversible error, the Appellant must meet the burden of showing 1) the prosecution has actually suppressed evidence after that evidence has been requested by the defense; 2) the evidence was favorable to appellant's defense; and 3) the evidence is material either to the guilt of appellant or to his punishment. *Lay v. State,* 752 P.2d 823, 826 (Okl.Cr.1988), citing to *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

■ The failure of the prosecution to produce the video tape, in light of Appellant's request, was error. Evidence of a defendant's polygraph examination wherein he de-

nies complicity in a crime is exculpatory to the defense. However, we do not find the video tape material to the Appellant's defense.

During the video taped examination, Appellant not only specifically denied any knowledge of the murder and the victim but also denied committing the murder. As such, the tape is merely cumulative to Appellant's trial testimony and to his prepared defense of non-involvement in the crime.

Appellant alleges that he was prejudiced by the absence of the video tape in that he was hampered in fully cross-examining prosecution witness Terri Holland. He argues that the tape would have clearly cast doubt upon the credibility of Holland's testimony that Appellant had announced his guilt to the entire Pontotoc County jail.

The record shows that defense counsel was able to thoroughly test Holland's credibility on this particular issue without the video tape. On direct examination Holland testified that Appellant spoke in such a loud voice about the murder that anyone who was in the jail, both inmates and jailers, could have heard him. She remained consistent on this point on cross-examination but was unable to name any of the jailers or inmates who might have heard Appellant's statements.

During his case in chief, Appellant presented the Administrator for the Pontotoc County Jail and six (6) jailers who all testified that they had never heard Appellant make any incriminating statements while in the jail.

Appellant further contends that if he had the tape prior to trial he could have disputed the State's case which was "built around a series of alleged admissions." A comparison of the video tape with Appellant's other statements reveals numerous inconsistencies, including the degree of Appellant's friendship with Dennis Fritz, and the date of his last visit to the Coachlight Club. While the tape reflects Appellant's denial of the crime, it also demonstrates a lack of credibility. Therefore, the use of the tape at trial is questionable.

Appellant alleges that the video tape could have been used for several purposes, but fails to show that any reasonable probability exists that, had the tape been provided to the defense prior to trial, that the outcome of the trial would have been different. *See Irvin v. State,* 617 P.2d 588, 594 (Okl.Cr.1980). Therefore, we find that the failure to disclose the video tape did not deprive Appellant of a fair trial.

**IT IS SO ORDERED.**

**WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 9th day of September, 1991.

/s/ James F. Lane
JAMES F. LANE
Presiding Judge.

/s/ Gary L. Lumpkin
GARY L. LUMPKIN,
Vice Presiding Judge.

/s/ Tom Brett
TOM BRETT,
Judge.

/s/ Ed Parks
ED PARKS,
Judge.

/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Judge.